IN THE UNITED STATES BANKRUPTCY COURT FOR

THE DISTRICT OF MARYLAND

(Baltimore Division)

| | | |
|---|---|---|
| In Re: | | * |
| | Waldon Enterprises, LLC, | * |
| | | *  Case No. 23-15289-DER |
| | | * |
| | | * |
| | Debtor. | *  Chapter 11, Subchapter V |
| | | * |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

### DEBTOR'S THIRD AMENDED CHAPTER 11, SUBCHAPTER V PLAN OF REORGANIZATION

Waldon Enterprises, LLC, the above-captioned debtor and debtor in possession herein (the "Debtor"), proposes the following Third Amended Chapter 11, Subchapter V Plan of Reorganization (the "Plan") pursuant to §§ 1190 and 1191 of Chapter 11 of the United States Code (the "Bankruptcy Code"). A brief history of the Debtor's business operations is attached hereto as **Appendix A**.

All creditors and equity security holders should refer to Articles III through VII of this Plan for information regarding the precise treatment of their claims or interests. Specific treatment of claims is set forth in **Appendix B**. **Your rights may be affected. You should read these papers carefully and discuss them with your attorney if you have one. (If you do not have an attorney, you may wish to consult one.) This Plan is a proposal by the Debtor and subject to court approval after an opportunity for objections and a hearing. Please refer to the Court's forthcoming Scheduling Order for important information regarding Plan voting and objection deadlines.**

<u>Background</u>

1.      On July 28, 2023 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. The debtor continues  in possession of its property and manages its financial affairs as a debtor in possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

2.      The Debtor designated itself as a small business debtor, as that term is set forth in Bankruptcy Code § 101 (51D), and as it reflected on its voluntary petition, elected to have subchapter V (The Small Business Reorganization Act of 2019) of Chapter 11 apply to its case.

3.     Pursuant to the Notice of Appointment of Subchapter V Trustee [Dkt. # 7], Monique Desiree Almy was appointed the duly-qualified Subchapter V Trustee in this proceeding.

4.     No official committee of unsecured creditors will be appointed pursuant to Bankruptcy Code § 1181 (b).

5.     No request for a trustee or examiner has been made in this Chapter 11 case other than the standing trustee pursuant to Bankruptcy Code § 1183(a). No party has made any request to remove the Debtor as a debtor in possession pursuant to Bankruptcy Code § 1185.

6.     Debtor filed a Chapter 11 Plan of Reorganization on October 26, 2023 [Dkt. # 49], which was amended on February 20, 2024 (the "First Amended Chapter 11 Plan") [Dkt. #71] and March 21, 2024 (the "Second Amended Chapter 11 Plan") [Dkt. #85].  The purpose of this Third Amended Chapter 11, Subchapter V Plan of Reorganization is to amend the Second Amended Chapter 11, Subchapter V Plan of Reorganization.

<u>Definitions and Rules of Construction</u>

The definitions and rules of construction set forth in §§ 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Bankruptcy Code are used in this Plan, and they are supplemented by the following definitions:

A.    <u>Definitions</u>

Unless the context otherwise specifies or requires, the following terms shall have the meanings herein specified, such definitions to be applicable equally to the singular and plural forms of each term and to all genders:

<u>Administrative Expense Claims</u> shall mean any Claim which is entitled to administrative priority status pursuant to §§ 503(b) and 507(a)(2) of the Bankruptcy Code including, without limitation, the fees and expenses of the Subchapter V Trustee and Professionals employed by the Debtor and any taxes incurred during the pendency of this case.

<u>Allowed</u> with respect to any Claim shall mean: (i) a Claim against the Debtor that has been listed on the Debtor's Schedules, as such Schedules may be amended from time to time pursuant to Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent and for which no contrary Proof of Claim has been filed, (ii) any Claim for which a Proof of Claim was properly and timely filed in accordance with any order of the Bankruptcy Court, the Plan, the Bankruptcy Code, and the Bankruptcy Rules, as to which no objection to allowance is made by the Debtor or a party in interest or as to which any objection has been determined by a Final Order to the extent such objection is determined in favor of the respective Holder or (iii) any Claim expressly allowed by a Final Order or pursuant to the Plan. Any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated or disputed, and for which no Proof of Claim has been timely filed, is not considered allowed and shall be expunged on the

effective date without further action by the Debtor and without any further notice to or action, order or approval of the Bankruptcy Court.

Bankruptcy Code shall mean the Bankruptcy Code, 11 U.S.C. §§ 1101 et seq., and any amendments thereto.

Bankruptcy Court shall mean the United States Bankruptcy Court the District of Maryland or any other court having jurisdiction over the Debtor's Chapter 11 case or any proceeding arising under this Chapter 11 Case.

Bankruptcy Rules shall mean (i) the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended and promulgated under § 2075 of Title 28 of the United States Code, (ii) the Federal Rules of Civil Procedure, as amended and promulgated under § 2072 of Title 28 of the United States Code, (iii) the Local Rules of the Bankruptcy Court, and (iv) any standing orders governing practice and procedure issued by the Bankruptcy Court, each as in effect on the Petition Date, together with all amendments and modifications there to the extent applicable to this case or proceedings herein, as the case may be.

Claim shall have the meaning ascribed to such term in § 101(5) of the Bankruptcy Code.

Class [#] shall mean any class in which Allowed Claims are classified pursuant to this Plan.

Confirmation Date shall mean the date the entry of the Confirmation Order becomes a Final Order.

Confirmation Order shall mean the order of the Bankruptcy Court in this Chapter 11 case confirming the Plan pursuant to § 1129 and other applicable sections of the Bankruptcy Code.

Creditor shall mean the Holder of a Claim within the meaning of § 101(10) of the Bankruptcy Code, including Secured Creditors, Unsecured Creditors, and Creditors with Administrative Expense Claims and Priority Tax Claims.

Debtor shall mean Waldon Enterprises, LLC, the debtor in possession in this Chapter 11, Subchapter V case.

Disposable Income shall mean the Net Income of the Debtor.

Disbursing Agent shall mean the Debtor.

Effective Date shall mean the first business day following the date that is fourteen (14) days after the entry of the Confirmation Order.

Executory Contracts shall mean all contracts and unexpired leases to which the Debtor is a party, and which are executory within the meaning of § 365 of the Bankruptcy Code.

3

Final Order shall mean an order or judgment of the Bankruptcy Court which has not been reversed, stayed, or modified or amended and: (i) as to which the time to appeal or seek reconsideration or rehearing thereof or file a petition for certiorari has expired; (ii) in the event of a motion for reconsideration or rehearing or petition for certiorari is filed, such motion or petition shall have been denied by an order or judgment of the Bankruptcy Court or other applicable court; or (iii) in the event of an appeal is filed and pending, a stay pending appeal has not been entered; provided, however that with respect to an order or judgment of the Bankruptcy Court allowing or disallowing a Claim, such order or judgment shall have become final and non-appealable; and provided further, however, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or analogous rule under the Bankruptcy Rules, may be filed with respect to such order or judgment shall not cause such order or judgment not to be a Final Order.

Holder shall mean (a) as to any claim, (i) the owner or holder of such Claim as such is reflected on the Proof of Claim filed with respect to such Claim, (ii) if no Proof of Claim has been filed with respect to such Claim, the owner or holder of such Claim as such reflected on the Schedules or the books and records of the Debtor or as otherwise determined by order of the Bankruptcy Court, (iii) if the owner or holder of such Claims has assigned or transferred the Claim to a third party and the Debtor has received sufficient written evidence of such assignment or transfer, the assignee or transferee; or (iv) any subrogee of a holder of a Secured Claim; and (b) as to any interest, the record owner or holder of such interest as of the Effective Date.

Impaired shall mean any Claim or Interest that is impaired within the meaning of § 1124 of the Bankruptcy Code.

Interest shall mean the interest of any member's interest in the Debtor.

Net Income shall mean all of the Debtor's income (net of returns, discounts, and/or other credits) minus all expenses (as such terms are defined by generally accepted accounting principles, consistently applied).

Petition Date shall mean July 28, 2023, the date on which the Debtor commenced this Chapter 11, Subchapter V case.

Plan shall mean this Chapter 11, Subchapter V Plan of Reorganization in its present form or as it hereafter may be modified, amended, or supplemented in accordance with provisions of the Bankruptcy Code.

Priority Tax Claim shall mean any Allowed Claim of a governmental unit pursuant to Bankruptcy Code §507(a)(8); provided, however, any Claims for penalties asserted by governmental units shall not be a Priority Tax Claim.

Professionals shall mean persons, including attorneys, accountants, the Trustee, and other professionals, retained or appointed in the Chapter 11 case or to be compensated pursuant

4

to §§ 327, 328, 330, 503(b), and 1103 of the Bankruptcy Code and Order of the Bankruptcy Court.

Projections shall mean the Debtor's monthly cash flow projections that are attached hereto as **Exhibit 1**, as may be modified, and amended. **Projections are not a guarantee of the amounts to be paid under this Plan**. Further, to the extent amounts set forth in the projections do not match amounts due under a contract, lease or other agreement, the amounts set forth in the projections will not alter or amend any amounts actually due under such contracts, leases or other agreements.

Secured Claim shall mean a secured claim pursuant to § 506 of the Bankruptcy Code and shall mean an Allowed Claim in an amount equal to the present value of the applicable Creditor's interest in the Debtor's interest in the property, or in the amount subject to setoff, as may be established by this Plan, the Confirmation Order, or separate Order of the Bankruptcy Court.

Trustee shall mean Monique Almy, the Subchapter V trustee appointed in this Chapter 11 case pursuant to § 1183 of the Bankruptcy Code.

Unsecured Claim shall mean any Claims which is not an Administrative Expense Claim, Priority Tax Claim or a Secured Claim, including (i) any Claim arising from the rejection of an executory contract or unexpired lease under § 365 of the Bankruptcy Code, (ii) except as otherwise provided in the Plan, any portion of a Claim to the extent the value of the Creditor's interest in the estate's interest in the Debtor's property securing such Claim is less than the amount of the Allowed Claim, or to the extent that the amount of the Claim subject to setoff is less than the amount of the Allowed Claim, as determined pursuant to § 506(a) of the Bankruptcy Code, (iii) any Claim arising from the provision of goods or services to the Debtor prior to the Petition Date, and (iv) any Claim designated as an Unsecured Claim elsewhere in the Plan.

    B.      Terms of Construction

Capitalized terms used in this Plan shall have the meaning set forth herein. In the event a capitalized term is not defined herein, then it shall have the meaning given in the Bankruptcy Code or Bankruptcy Rules. In the event a capitalized term is not defined in the Plan, the Bankruptcy Code, or the Bankruptcy Rules, then it shall have the meaning such term has in ordinary usage and if one or more meaning for such term exists in ordinary usage, then it shall have the meaning which is most consistent with the purposes of this Plan and the Bankruptcy Code. The terms of this Plan shall not be construed against any person but shall be given a reasonable construction, consistent with the purposes hereof and of the Bankruptcy Code.

The words "herein," "hereof," "hereto," "hereunder," and others of similar import refer to this Plan as a whole and not to any particular section, subsection, or clause contained in this Plan.

## Article I.  Source of Payments

1.1     Pre-Confirmation Payments.  As of the date of the filing of this Plan, Counsel for the Debtor is holding a total of fifteen thousand seven hundred eighty dollars ($15,780) ($280 is from pre-petition retainer and $15,500 is from post-petition payments by the Debtor) in his IOLTA account for the Debtor. These funds (the "Preconfirmation Payments") shall be applied to administrative claims in accordance with the terms of this Plan and are subject to Court approval.  The Debtor will continue to fund this account until confirmation.

1.2     Post-Confirmation Payments.  During the term of this Plan the Debtor shall pay all available net income in accordance with the terms of this Plan directly to the Creditors.

## Article II.  Plan Term

2.1     The term of this Plan begins on the Effective Date and ends on the sixtieth (60th) month after that date.

## Article III.  General Distributions Under Plan

3.1     The value of the property to be distributed under the Plan during the term of the Plan is not less than the Debtor's Net Income for that same period.  General unsecured creditors holding allowed claims will receive distributions which the Debtor has valued at approximately 27.5 cents on the dollar.  The Plan also provides for the payment of secured, administrative, and priority claims in accordance with the Bankruptcy Code.

## Article IV.  Classification and Treatment of Claims and Interests

4.1

1.  The Debtor has classified all claims and interests in accordance with §§ 1122, 1123, and 1190 of the Bankruptcy Code.  A chart detailing each class of claims or interests under the Plan, and the Debtor's proposed treatment for each is attached hereto as **Appendix B**.

2.  All parties claiming administrative expense priority (including unsecured claims) pursuant to § 507(a)(2) of the Bankruptcy Code but not already treated as such under this plan, shall file an application to approve their respective asserted administrative claim priority status no later than thirty (30) days after the Effective Date.  Any claim that is granted administrative expense priority shall receive the treatment set forth in **Appendix B**.

3.  Disputed Claims:

    a.  A disputed claim is a claim that has not been allowed or disallowed by a final non-appealable order and, either:

6

      i.   A proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or

      ii.   No proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

  b.   <u>Delay of Distribution on a Disputed Claim</u>:  No distribution will be made on a disputed claim unless the claim is allowed by a final non-appealable order.

  c.   <u>Settlement of Disputed Claims</u>:  The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Federal Rule of Bankruptcy Procedure 9019.

<u>Article V.  Payments to Creditors Under Plan</u>

5.1     Unless otherwise provided in this Plan or indicated on **Appendix B**, funds received by the Disbursing Agent or otherwise included in this Plan but not specifically disbursed to a secured creditor under this Plan, shall be used to pay the following claims in the priority indicated:

1.     Except as provided in § 1191(e) of the Bankruptcy Code, all claims entitled to priority under § 507 of the Bankruptcy Code shall be paid in accordance with § 1129(a)(9) of the Bankruptcy Code and as set forth on **Appendix B**.

2.     Pursuant to § 1191(e) of the Bankruptcy Code, the payment of claims entitled to priority under § 507(a)(2) and § 507(a)(3) of the Bankruptcy Code shall be paid under the Plan as set forth on **Appendix B**.

3.     All secured claims shall be paid in accordance with § 1129(b)(2)(A), § 1191(b),  and § 1191(c) of the Bankruptcy Code, as set forth on **Appendix B**.

4.     Upon confirmation, the Preconfirmation Payments shall cease.  After payment of any allowed preconfirmation administrative claims from the Preconfirmation Payments, Debtor's Counsel shall transfer such balance, if any, to the Disbursing Agent to be distributed pursuant to this Plan.

5.     The Debtor as Disbursing Agent shall not be paid.

6.     After payment of the foregoing claims, sums received by the Disbursing Agent shall be paid, on a *pro rata* basis, to allowed, general unsecured claims.

7.     In accordance with § 1191 of the Bankruptcy Code and the terms of this Plan, the Debtor's equity security holders shall retain their interests in the Debtor as set forth on **Appendix B.**

<u>Article VI.  Secured Claims Generally</u>

6.1    The term "secured claim" as used in this Plan shall be consistent with § 506 of the Bankruptcy Code and shall mean an allowed claim in an amount equal to the present value of the applicable creditor's interest in the Debtor's interest in the property, or in the amount subject to setoff, as may be established by this Plan, the Confirmation Order, or separate Order of the Court.

### Article VII.  Secured Claims Being Modified Under § 1190

7.1    The Debtor does not propose any modifications governed by § 1190(3) of the Bankruptcy Code.

### Article VIII.  Trustee Compensation

8.1    The Trustee shall be paid for services rendered in this Chapter 11 case an administrative and/or priority claim under § 507 of the Bankruptcy Code and pursuant to Article IV of this Plan, as set forth on **Appendix E-1**.  All fees and expenses requested by the Trustee, including those on **Appendix E-1**, are subject to review and approval by the Court under §§ 329 and 330 of the Bankruptcy Code.

### Article IX.  Compensation of Professionals

9.1    The Debtor's attorney (the "Attorney"), Nager Law Group, LLC, 10015 Old Columbia Road, Ste. B215, Columbia, MD 21046, shall be paid for the services rendered to the Debtor herein as an administrative and/or priority claim under § 507 of the Bankruptcy Code and pursuant to Article IV of this Plan, as set forth on **Appendix B**.  All fees and expenses requested by the Debtor's attorney, including those on **Appendix B**, are subject to review and approval by the Court under §§ 329 and 330 of the Bankruptcy Code.

9.2    The Debtor's accountant (the "Accountant"), Strategic Tax Resolution, LLC, 200 E. Joppa Rd., Suite 103, Towson, MD 21286, shall be paid for the services rendered to the Debtor herein as an administrative and/or priority claim under § 507 of the Bankruptcy Code and pursuant to Article IV of this Plan, as set forth on **Appendix B**.  All fees and expenses requested by the Debtor's accountant, including those on **Appendix B**, are subject to review and approval by the Court under §§ 329 and 330 of the Bankruptcy Code.

### Article X.  Liquidation Analysis

10.1    Attached hereto as **Appendix D** is the Liquidation Analysis required by § 1190(1)(B) of the Bankruptcy Code and the Local Rules of this Court.

### Article XI.  Debtor's Net Income and Plan Funding

11.1    An exhibit describing (i) the Debtor's projected disposable income as defined by § 1191(d) of the Bankruptcy Code, (ii) the details supporting and the assumptions under which said projections were made, (iii) the source and value of funds and assets available for distribution under this plan, (iv) a summary of payments under this Plan, and a summary of payments to be made to the Trustee/Disbursing Agent is set forth on **Appendix E**.

### Article XII.  Executory Contracts and Unexpired Leases

12.1    Assumption.  Pursuant to § 365 of the Bankruptcy Code, the Debtor assumes each executory contract and unexpired lease listed on **Appendix F**, effective upon the Effective Date of this Plan.  To the extent the Debtor proposes to make cure payments as may be required under § 365(b), those cure payments shall be made as set forth on **Appendix F.**

12.2    Rejection.  The Debtor will be conclusively deemed to have rejected all executory contracts and unexpired leases not (i) expressly listed on **Appendix F** and assumed under this Plan or (ii) previously assumed, and if applicable assigned, before the Effective Date; or (iii) that are the subject of a pending motion to assume (and if applicable, assign).  A proof of claim arising from the rejection of an executory contract or an unexpired lease under the Plan must be filed with the Court and served on the Trustee and the Debtor no later than 30 days after the Effective Date.

12.3    Assignment. [Intentionally left blank.]

### Article XIII.  Property Vests in Debtor Free and Clear

13.1    Except as provided in this Plan or the order confirming this Plan, all property of the estate, pursuant to §§ 1141(b) and 1141(c) of the Bankruptcy Code, vests in the Debtor as of the Effective Date free and clear of any claim or interest of any creditor provided for by this Plan.

### Article XIV.  Confirmed Plan Binding on Debtor and Creditors

14.1    Except as provided in §§ 1141 or 1192 of the Bankruptcy Code, as applicable, the provisions of this Plan shall, upon confirmation, bind the Debtor, each and every creditor of this estate and each party in interest, whether or not the claim of such creditor or party is provided for by the Plan and whether or not such creditor or party has accepted or has rejected the Plan.

### Article XV.  Discharge

15.1    Discharge (Consensual Plan Only). If the Debtor's Plan is confirmed under § 1191(a), on the Effective Date of the Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code. The Debtor

will not be discharged from any debt: (i) imposed by this Plan; or (ii) excepted from discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure; or (iii) of a kind specified in § 1141(d)(6)(B).

15.2    Discharge (Non-Consensual Plan Only). Upon the payment by the Debtor of the sums required under this Plan and application to the Court, the Debtor shall be eligible to receive a discharge under § 1192 of the Bankruptcy Code.

## Article XVI.  Miscellaneous

16.1 Notice of Substantial Consummation.  Pursuant to LBR 2033-1(e), "Within 14 days after a Plan under Subchapter V is substantially consummated (as defined in 11 U.S.C. § 1101(2)), the debtor shall file with the court and serve on the trustee, the United States Trustee, and all parties in interest notice of such substantial consummation pursuant to 11 U.S.C. § 1183(c)(2). The notice shall include a certification by the debtor that includes a summary report of the disbursements, distributions, and transfers that have been made pursuant to the plan, together with a description of other acts taken to consummate the plan.  The certification shall also describe any matters involving consummation that have not been fully resolved."

16.2 Severability.  If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

16.3 Binding Effect.  The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of, the successors or assigns of such entity.

16.4 Appendices.  The Appendices attached to the Plan are incorporated into the Plan by reference as if the same were fully rewritten herein.

16.5 Captions.  The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

16.6 Controlling Effect.  Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Maryland govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.]

16.7    Corporate Governance.  [If the Debtor is a corporation include provisions required by § 1123(a)(6) of the Bankruptcy Code.]]

16.8    Further Requests.   The Debtor may request the Bankruptcy Court to execute any appropriate orders voiding the liens pursuant to this Plan that the Debtor may file in the Circuit Court of Anne Arundel County and record in the land records of Anne Arundel County.

## Article XVII.  Plan Proposed in Good Faith

17.1    The Debtor represents that it is within Debtor's ability to carry out this Plan, and the Plan is submitted in good faith.

## Article XVIII.  Retention of Jurisdiction

18.1    The Court shall retain jurisdiction of this Chapter 11 case to issue orders necessary to the consummation of the Plan; to determine the allowance of compensation and expenses of professionals; to determine any and all adversary proceedings, applications and contested matters; to determine issues or disputes relating to the assumption of executory contracts and any claims related thereto; to determine disputes as to classification or allowance of claims or interests; to issue such orders in aid of execution of this Plan to the extent authorized by § 1142 of the Bankruptcy Code; to enforce the provisions of the Plan; to recover all assets of the Debtor and property of the Debtor's estate, wherever located; to resolve any dispute between or among any of the parties to this bankruptcy proceeding, to determine other such matters as may be set forth in a confirmation order or as may be authorized under the provisions of the Bankruptcy Code; to enter a final decree closing the bankruptcy case; and to correct any defect, cure any omission or reconcile any inconsistency in this Plan or confirmation order, and to take any action or make any ruling as may be necessary to carry out the purpose and intent of this Plan.

## Article XIX.  Default

19.1    An event of default under the Plan shall occur if the Debtor fails to make any payment required under the Plan, or to perform any other obligation required under the Plan, for more than ten (10) days after the time specified in the Plan for such payment or other performance ("Event of Default"). Upon the occurrence of an Event of Default, the United States Trustee or Creditor affected by the Event of Default shall provide Debtor's Attorney, with a copy to the Trustee, of a written notice of default and a ten (10) day opportunity to cure or to move to obtain from the Bankruptcy Court an extension of time to cure the default, or a determination that no default occurred.  In the event the Debtor fails to cure the default or seek and obtain an extension to cure from the Bankruptcy Court, the United States Trustee or Creditor(s) shall be entitled to seek conversion of the Chapter 11 Case to Chapter 7, or, alternatively, enforce its/their state court rights and remedies outside of Bankruptcy Court.

## Article XX.  Other Provisions of the Plan

20.1    Special Tax Provision. Any transfer or sale of any property of the Bankruptcy Estate, including real property, shall be made pursuant to the special tax provisions set forth in the Bankruptcy Code, Section 1146(a), which sets forth that the issuance, transfer, or exchange of a security, or the making or delivery of an instrument of transfer under a plan confirmed under Section 1129 of the Bankruptcy Code may not be taxed under any law imposing a stamp tax or similar tax.

20.2 Uncashed Checks. If a check(s) distributed on a claim remains uncashed upon the final distribution, and such check(s), in the aggregate, totals less than One Thousand Dollars

($1,000.00), such payment shall be disbursed to the unsecured creditors.

20.3 <u>Address of Distributions</u>.  Distributions to creditors of claims shall be made:  (1) at the address set forth on the respective Proofs of Claim filed by creditors; (2) at the addresses set forth in any written notices of address change delivered to the Debtor after the date of any related Proof of Claim; or (3) at the address reflected in the Debtor's Schedules of Assets and Liabilities if no Proof of Claim has been filed and the Debtor has not received a written notice of a change of address.

20.4 <u>Returned Mail</u>.  If the distribution to a creditor is returned to the Trustee as undeliverable, no further distribution shall be made to such creditor unless and until such time as a distribution becomes deliverable pursuant to the provisions set forth in this Plan.

20.5 <u>Failure to Receive Payment</u>.  Except for those creditors holding secured claims, which shall be governed by those provisions of this Plan dealing with the respective secured creditor, if any party-in-interest fails to receive the payment as provided under the Plan or questions the Debtor's compliance with the Plan in any way, such party shall provide the Debtor, the Debtor's undersigned attorneys and the Trustee with written notice thereof by certified mail, return receipt requested, and the Debtor may cure such non-compliance, if any, within thirty (30) days from receipt of such notice.


<u>Dated: April 24, 2024</u>

Respectfully submitted,

**WALDON ENTERPRISES, LLC**

By:


<u>/s/ Michael Waldon</u>
Michael Waldon, Managing
Member

<u>/s/ Alon J.Nager</u>
Alon J. Nager
Federal Bar No. 28551
**NAGER LAW GROUP, LLC**
10015 Old Columbia Rd.
Ste. B215
Columbia, MD 21046
 alon@nagerlaw.com
(443) 701-9669
(443) 701-9668 (fax)
*Attorney for the Debtor*

## <u>**Appendix A**</u>  (Debtor's Business History)

A.        <u>Nature and History of the Debtor's Business or Commercial Activities:</u>

Waldon Enterprises, LLC (the "Debtor") is a Maryland limited liability company founded in 2013 with its headquarters located in Annapolis, Maryland. Michael and Jennifer Waldon, the Debtor's managing members (the "Waldons"), began by developing a product line in the coastal aesthetic which they named "Annapolis Candle". The Debtor's initial focus with Annapolis Candle was on home fragrance manufacturing, marketing, and sales of products such as candles, diffusers, wax melts, etc. With considerable experience in the home fragrance industry, the Debtor later purchased a retail home fragrance business in 2015, which it referred to as "Candles Off Main". Candles Off Main brought a different side to the Debtor's business, where it focused on storefront and e-commerce sales of other home fragrance brands that were not produced by the Debtor. The goal of the acquisition was to expand the Debtor's offerings, sales, and profitability. The company operates its warehouse, storefront, and offices out of its Annapolis, Maryland facility.

B.        <u>Ownership Structure of the Debtor's Business or Commercial Activities:</u>

The Debtor is owned fifty-one percent (51%) by Jennifer Waldon and forty-nine percent (49%) by Michael Waldon, and currently employs five (5) people, including the Waldons.

C.        <u>Description o f the Performance of the Debtor's Business or Commercial Activities in the Three Years Before the Bankruptcy Filing and the Events Leading to the Debtor's Bankruptcy Filing:</u>

The Debtor brought in approximately $2,605,166.00, $1,984,232.00, and $871,000.00 of gross revenue in 2021, 2022 and 2023 YTD (January 1 through July 28) respectively. Due to decreased sales, increased expenditures, and the local and national health issues plaguing the Country beginning in 2020, it became impossible for the Debtor to maintain a profitable business. The Debtor, like many others at the time, was forced to seek out government assistance in the form of PPP Loans as well as various types of alternative financing to make ends meet.

Unfortunately, some of the financing arrangements that were entered into were not sustainable and forced the Debtor into bankruptcy. The Debtor was unable to make the required payments and sought the advice of counsel. Working with counsel and an accountant, the decision was ultimately made to shut down the Candles Off Main side of the business and focus on the seemingly more profitable Annapolis Candle brand. The Debtor believes that this pivot is the key to its continued viability and will allow it to emerge out of this bankruptcy as a leaner, meaner player in the home fragrance business. The goal of this case is to confirm this Plan on a consensual basis, believing that it is fair and reasonable to creditors while allowing the Debtor to become debt-free within a reasonable time frame.

D.    <u>Other Pertinent or Miscellaneous Information:</u>

The Debtor has successfully negotiated a sublease with a subtenant.  If the deal is approved, it will reduce the Debtor's expenses by approximately $4,488.38 for months 1-12, $4,623.03 for months 13-24 and $4,761.72 for months 25-36 during the applicable term of the proposed sublease (plus the subtenant's share of the utilities, etc.).  Although the Debtor will have reduced expenses that is partially off-set for the first months by the cure payment. The sublease is subject to final approval by the landlord, subtenant and sublandlord (and possibly the Bankruptcy Court).

**Appendix B**

(Classification and Treatment of Claims and Interests)

| Class No. | Description of Claims or Interests in Class | Total Amount of Claims or Interests in Class | Monthly Plan Payment | Proposed Treatment Under Plan (including whether impaired) | Estimated Percentage Recovery[1] |
|---|---|---|---|---|---|
| 1a. | Cure of Pre-Petition Lease Arrearage and Attorney's Fees – ACP East LLC | $21,409.53 | By agreement, this claim shall be paid as follows: $1,409.53 on May 1, 2024, and $4,000 per month beginning on June 1, 2024, and continuing July 1, August 1, September 1, and October 1 of 2024. | **Impaired** – This will be paid pursuant to an agreement between the Debtor and the Landlord over a 6-month period. These payments are included in the Debtor's projections, which are attached hereto as Exhibit "1". | 100% of the agreed amount. |
| 1b. | Administrative Expense Priority Claims – Attorney's fees claim of Alon J. Nager, Accountant's fees claim of T. Gregory Talbott and anticipated Subchapter V Trustee claim of Monique Almy | $95,000.00 (estimated) | The Preconfirmation Payments will be used to pay the Subchapter V Trustee's Fees in full by the Effective Date or upon Court approval of her fee application, whichever occurs later. Debtor's Attorney and | **Not impaired** – Debtor anticipates a claim from the Subchapter V Trustee, Monique Almy of approximately $20,000. Debtor anticipates an attorney fee claim from counsel Alon J. Nager in the amount of | 100% |

---

[1] Based upon claims filed and projected net income.

| Class No. | Description of Claims or Interests in Class | Total Amount of Claims or Interests in Class | Monthly Plan Payment | Proposed Treatment Under Plan (including whether impaired) | Estimated Percentage Recovery[1] |
|---|---|---|---|---|---|
| | | | Accountant will be paid in full at $7,131/mo. for months 1-7 and $8,199 for months 8-10 as projected. <u>Although calculated monthly, all payments will be made on a quarterly basis.</u> | $50,000, Debtor also anticipates a claim from accountant T. Gregory Talbott in the amount of approximately $25,000.  All pre-confirmation fees are subject to Court approval. | |
| 2. | Priority Claims | $0.00 | $0.00 n/a | Debtor has reserved this class for any priority tax claims which may be filed, although none are expected. | n/a |
| 3. | Secured Claim – Claim 16 – Truist Bank[2] | $52,847.05 at 0% interest | Based upon Projections, this claim should be paid in full as follows: $4,485/mo. for months 11-22. <u>Although calculated monthly, all payments will be made on a quarterly basis.</u> | **Impaired -** This claim secures an interest in all of Debtor's assets, other than "Consignment Inventory and Proceeds" and the "Revolution 360T UV Rotary Printer".  Those assets are separately secured by other liens. | 100% |
| 4. | Secured Claim – Regions Bank | $87,639.56, of which $50,000.00 is secured | Based upon Projections, this claim should be paid in full as | **Impaired –** Partially Secured by Revolution 360T UV Rotary | |

---

[2] Truist has agreed to waive its post-petition interest claim against the Debtor.  This claim will be included in Class 5 – Allowed General Unsecured.

| Class No. | Description of Claims or Interests in Class | Total Amount of Claims or Interests in Class | Monthly Plan Payment | Proposed Treatment Under Plan (including whether impaired) | Estimated Percentage Recovery[1] |
|---|---|---|---|---|---|
| | d/b/a Ascentium Capital[3] | according to Claim No. 9. We have agreed to pay this through the plan at 8% interest per annum. | follows: $3,714/mo. for months 11-19, and $4,248/mo. for months 20-22 and $8,733/mo. for months 23-24, totaling $61,630. <u>Although calculated monthly, all payments will be made on a quarterly basis.</u> | Printer. According to Claim No. 9, the value of the collateral is $50,000. $50,000 will be paid as a secured claim at 8% interest per annum, with the balance to be treated as unsecured in Class 5 below. The creditor has agreed to this treatment. | |
| 5. | Allowed General Unsecured [456] | $942,320.07 (including those arising from 506 motions, rejections of executory contracts and objections) | Based upon Projections, these claims should be paid pro rata as follows: $8,733/mo. for months 25-31; $7,095/mo. for months 32-43; $6,184/mo. for months 44-55 and $7,745/mo. | **Impaired** – to be paid pro rata depending on what remains after paying Net Income to all the preceding classes. | $259,204 or 27.5%. |

[3] Debtor and Regions Bank d/b/a Ascentium Capital worked out an agreement to bifurcate this claim and adjust the interest rate. A stipulation/motion will be filed with the Court if necessary.

[4] Debtor filed Motions to Determine Secured Status and Avoid Liens as to Square Financial Services, Inc. [Dkt. #43] and White Road Capital, LLC d/b/a GFE Holdings [Dkt. #44]. Both Motions were granted by the Court, and as such, these creditors are listed in Class 5 as having unsecured general claims, although GFE's claim may ultimately be disallowed.

[5] Debtor has obtained Court approval to reject the Executory Consignment Contract with Ouiby, Inc. d/b/a Kickfurther and surrender any remaining inventory and make any outstanding post-petition payments. Kickfurther did not pick up the inventory within the allotted time. Debtor subsequently filed an Objection to Kickfuther's claim [Dkt. #75] alleging that it is wholly unsecured, which was sustained [Dkt. #87]. Therefore, Kickfurther's claim is wholly unsecured.

[6] Debtor filed an Objection to Claim No. 13 of ODK Capital, LLC [Dkt. #45], which was sustained, and thus ODK Capital LLC's claim is listed in Class 5 as an allowed, unsecured general claim.

| Class No. | Description of Claims or Interests in Class | Total Amount of Claims or Interests in Class | Monthly Plan Payment | Proposed Treatment Under Plan (including whether impaired) | Estimated Percentage Recovery[1] |
|---|---|---|---|---|---|
| | | | for months 56-60. Note that this is based upon Projections and not a guarantee of any particular payout. <u>Although calculated monthly, all payments will be made on a quarterly basis</u>. | | |

## **Appendix C**

(Claims Being Modified Under Section 1190(3))

None.

**Appendix D**
(Liquidation Analysis)

| Item | Market Value as of Petition Date and Basis for Valuation | Lien or Interest as of Petition Date | Equity for Estate |
|---|---|---|---|
| Inventory | $50,000 based upon Sch. A/B | $50,000.00 | $0.00 |
| Checking Account (First Citizens) | $20,207.70 based upon Sch. A/B | $20,207.70 | $0.00 |
| Accounts Receivable (<90 days) | $10,203.90 based upon Sch. A/B | $10,203.90 | $0.00 |
| Accounts Receivable (>90 days) | $1,900.00 based upon Sch. A/B | $1,900.00 | $0.00 |
| Office Machinery, Fixtures and Equipment | $8,000.00 based upon Sch. A/B | $8,000.00 | $0.00 |
| Vehicles (2 Forklifts) | $2,800.00 based upon Sch. A/B | $2,800.00 | $0.00 |
| Goodwill | $0.00 based upon Sch. A/B | n/a | $0.00 |
| Intellectual Property and Non-Tangible Assets (Customer Lists, Domain, Websites) | $0.00 based upon Sch. A/B | n/a | $0.00 |
| Security Deposit (2003 Commerce Park Dr.) | No value as it will probably be returned to the landlord or Debtor at the end of the lease. | n/a | $0.00 |
| Commercial Lease (2003 Commerce Park Dr.) | $0.00 based upon Sch. A/B | n/a | $0.00 |
| Consignment Inventory and Proceeds | Minimal Value - TBD | Jars abandoned by Ouiby, Inc. dba Kickfurther. | $0.00 |
| 3D Printer | $50,000 based upon Claim No. 9. | Any value would be reduced to $0 by Ascentium Lien. | $0.00 |

| Total | $93,111.60 | $93,111.60 | $0.00 |
|---|---|---|---|

### Appendix E-1

(Projected Disposable Income)

As seen in the attached **Exhibit 1**, Debtor's projected disposable income will be approximately as follows:

| | |
|---|---|
| Months 1-7 (2024) | $7,131/mo. ($21,393/qtr.) |
| Months 8-19 (2025) | $8,199/mo. ($24,597/qtr.) |
| Months 20-31 (2026) | $8,733/mo. ($26,199/qtr.) |
| Months 32-43 (2027) | $7,095/mo. ($21,285/qtr.) |
| Months 44-55 (2028) | $6,184/mo. ($18,552/qtr.) |
| Months 56-60 (2029) | $7,745/mo. ($23,235/qtr.) |

## **Appendix E-2**

(Assumptions and Support for Projected Disposable Income)

The 2024 year is based upon its prior performance for the Annapolis Candle side of the business (excluding the retail side of the business, "Candles Off Main", which was shut down in August, 2023) between January 1, 2023 and December 31, 2023. Debtor has also filed its monthly operating reports since the Petition Date which further demonstrate Debtor's ability to generate the revenue it projects in this Plan.

Other assumptions used in preparation of **Exhibit 1**:

    a.  Debtor assumes that its revenue will increase by 5% year over year starting in 2025.

    b.  Cost of Goods Sold - expense increases for COGS at 3% for 2025 and 5% thereafter.

    c.  General expenses are projected to increase starting in 2025 by 2% per year to reflect inflation.

    d.  We are projecting a sublease to bring in additional income of $4,488.38 - $4,761.72 per month plus a share of the subtenant's expenses starting May 1, 2024.

    e.  We believe that we will need to hire one additional staff member in 2026.

23

## Appendix E-3

### (Sources and Value of Funds and Assets for Distributions)

As stated in **Appendix 1**, Debtor shut down the Candles Off Main side of the business prior to filing this case and is now solely focused on Annapolis Candle. Annapolis Candle is less expensive to operate and more profitable. All net income from the operation of the business will be used to fund this Plan. In addition, the Debtor is negotiating a sublease which would bring in approximately $216,612.90 if approved. The Debtor does not anticipate additional income coming in from any other source.


## Preference Claims (Statement of Financial Affairs #3)

The Debtor listed the following pre-petition transfers within 90 days with an aggregate value of more than $7,575:

Vendors:
| | |
|---|---|
| LAFCO NY | $20,594.85 |
| NEST Fragrances | $20,357.94 |
| Faultless DBA Trapp Candles | $8,835.30 |
| K Hall Studios | $7,676.70 |

Lenders/MCAs:
| | |
|---|---|
| GFE Holdings | $24,600.00 |
| Fundbox, Inc. | $17,135.00 |
| Square Financial Services, Inc. | $8,405.25 |

The Debtor is reviewing these and will file preference claims that make sense. Any proceeds, net of attorney's fees and costs, from recovery of preferential transfers will be contributed to the funding in this case.

**Appendix E-4.A**

(Summary of Payments Under Plan)

| Creditor Name | Type of Claim | Claim Amount | Payment Amount | Payment Date(s) | Paid by Trustee (T) or Debtor (D) |
|---|---|---|---|---|---|
| ACP East LLC | Cure of Pre-Petition Arrears on Lease | $21,409.53 | $21,409.53 | May 1, 2024 ($1,409.53) and $4,000/mo. thereafter until paid in full. | D |
| Alon J. Nager | Admin | $50,000.00 | $50,000.00 | Months 1-10 | D |
| T. Gregory Talbott | Admin | $25,000.00 | $25,000.00 | Months 1-10 | D |
| Monique Almy | Admin | $20,000.00 | $20,000.00 | Effective Date or Upon Approval of Fee App (from Pre-Confirmation Payments). | D |
| ***Subtotal*** | ***Admin*** | ***$95,000.00*** | ***$95,000.00*** | | |
| Truist Bank | Secured | $52,847.05 | $52,847.05 | Months 11-22 | D |
| Regions/Ascentium | Secured | $50,000.00 + 8% interest = $61,630.00 | $50,000.00 + 8% interest = $61,630.00 | Months 11-24 | D |
| ***Subtotal*** | ***Secured*** | ***$114,477.05*** | ***$114,477.05*** | | |
| ODK Capital, LLC | Unsecured | $63,910.00 | Pro Rata | Months 25-60 | D |
| Square Financial | Unsecured | $47,320.00 | Pro Rata | Months 25-60 | D |
| GFE Holdings | Unsecured | $44,327.90* | Pro Rata* | Months 25-60 | D |
| Ouiby, Inc. | Unsecured | $57,389.62** | Pro Rata** | Months 25-60 | D |
| Amex | Unsecured | $67,182.63 | Pro rata | Months 25-60 | D |
| Apotheke | Unsecured | $1,705.00 | Pro rata | Months 25-60 | D |
| Bridgewater Candle | Unsecured | $541.33 | Pro rata | Months 25-60 | D |
| Brown & Joseph LLC | Unsecured | $836.25 | Pro rata | Months 25-60 | D |
| Capital One | Unsecured | $18,434.22 | Pro rata | Months 25-60 | D |
| Capital One | Unsecured | $1,999.29 | Pro rata | Months 25-60 | D |
| CFT Clear Finance | Unsecured | $78,000.00 | Pro rata | Months 25-60 | D |
| Council Baradel | Unsecured | $2,440.00 | Pro rata | Months 25-60 | D |
| Creative Co-op/Ilume[7] | Unsecured | $29,403.16 | Pro rata | Months 25-60 | D |

---

[7] Creative Co-Op and Ilume are both listed on Schedule F as having claims in this case.  However, they are the

25

| | | | | | |
|---|---|---|---|---|---|
| Desirepath | Unsecured | $6,425.30 | Pro rata | Months 25-60 | D |
| Faultless/Trapp | Unsecured | $10,013.00 | Pro rata | Months 25-60 | D |
| Forward Financing | Unsecured | $77,044.31 | Pro rata | Months 25-60 | D |
| Fundbox, Inc. | Unsecured | $31,572.19 | Pro rata | Months 25-60 | D |
| K Hall Studios | Unsecured | $0.00 | Pro rata | Months 25-60 | D |
| LAFCO NY | Unsecured | $9,842.69 | Pro rata | Months 25-60 | D |
| Maison Berger | Unsecured | $11,532.72 | Pro rata | Months 25-60 | D |
| Nest New York | Unsecured | $97,939.95 | Pro rata | Months 25-60 | D |
| Paypal Capital | Unsecured | $52,000.00 | Pro rata | Months 25-60 | D |
| Quickbooks Capital | Unsecured | $43,725.01 | Pro rata | Months 25-60 | D |
| Ravi&Heidi Waldon | Unsecured | $112,500.00 | Pro rata | Months 25-60 | D |
| Commercial Coll. NY | Unsecured | $671.50 | Pro rata | Months 25-60 | D |
| Regions/Ascentium | Unsecured | $37,639.56 | Pro rata | Months 25-60 | D |
| Truist Bank | Unsecured | $4,025.40 | Pro rata | Months 25-60 | D |
| Truist Bank | Unsecured | Waived interest-unknown | Pro rata | Months 25-60 | D |
| Uline | Unsecured | $2,006.34 | Pro rata | Months 25-60 | D |
| UPS | Unsecured | $28,893.00 | Pro rata | Months 25-60 | D |
| ***Subtotal*** | ***Unsecured*** | ***$942,320.07*** | Est. @ 27.5% | | |
| | | | Or $259,204 | | |

*The claims of GFE Holdings were marked as disputed, unliquidated, contingent on the Schedules.  GFE Holdings has not filed a claim in the case and the bar date has passed.  This claim may be disallowed barring some action on the part of this creditor. If disallowed, this will change the percentage to the unsecured creditors in Class 5.

**The claim of Ouiby, Inc. d/b/a Kickfurther is unsecured since Debtor's Objection [Dkt. #75] was sustained.

---

same entity and there is only one claim, so the Debtor has made the correction here.

### Appendix E-4.B

(Summary of Plan Payments)

| Payments by Debtor to Creditors During Term of Plan | |
|---|---|
| **Payment Date(s)** | **Payment Amount(s)** |
| | The Debtor shall pay its Net Income in accordance with this Plan on a Quarterly Basis. Based upon Projections, these are the anticipated payments: |
| Months 1-7 (2024) | $7,131/mo. ($21,393/qtr.) |
| Months 8-19 (2025) | $8,199/mo. ($24,597/qtr.) |
| Months 20-31 (2026) | $8,733/mo. ($26,199/qtr.) |
| Months 32-43 (2027) | $7,095/mo. ($21,285/qtr.) |
| Months 44-55 (2028) | $6,184/mo. ($18,552/qtr.) |
| Months 56-60 (2029) | $7,745/mo. ($23,235/qtr.) |
| | |
| | |
| | |

## Appendix F

(Assumed Executory Contracts and
Unexpired Leases)[8]

| Name and Address of Party to Debtor's Executory Contract | Description of Executory Contract [Or Contract ID No.] | Proposed Cure Amount and Anticipated Date of Cure Payment |
| --- | --- | --- |
| ACP East LLC c/o John T. Farnum Miles & Stockbridge, P.C. 1201 Pennsylvania Ave., Ste. 900 Washington, DC 20004 | Commercial Lease – As Amended | $21,409.53[9] |

---

[8] The Debtor has rejected its executory contract with Ouiby, Inc. d/b/a Kickfurther and had filed a motion requesting Court permission to do so [Dkt. #60], which was granted.

[9] The Debtor has agreed to pay the pre-petition claim of ACP East LLC [Claim No. 14] in full and waive any objection to such claim.  The Debtor and landlord have agreed to terms and are entering into a formal agreement in line with what is stated elsewhere in this plan.  The Debtor and landlord have also agreed to the following: "as of the entry of the Confirmation Order in the chapter 11 bankruptcy case of Waldon Enterprises, LLC, Waldon affirms that the Landlord is not in default under the Lease (as may have been amended), and Waldon, has no charge, lien, claim or claim of setoff under the Lease or otherwise against rents or other charges due or to become due thereunder." Also, at the time of filing this plan, the Debtor had not paid April, 2024 rent in full and has agreed to pay any arrearage for April, 2024 on or before April 30, 2024, and be current on any and all post-petition lease obligations as of any confirmation hearing in this case.